The first case is argued over zoom through this council will be appearing through zoom and that case is United States v. Patterson number 217053. Council, you may proceed. Mr. Abel. Thank you, your honor. The council, this case originates very early in the process after the Supreme Court's decision McGirt case and relies very heavily on the findings and decision made at that level. Interestingly enough, this came from a small rural county in east central Oklahoma called McIntosh County happened to be one in the same county as the Murphy v. Royal case, which preceded the McGirt case and was a part of the Supreme Court decision in that case in adopting that case and deciding it. Council was Murphy binding on the state of Oklahoma? At that point in time, it was binding. I think the court had withheld that pending the Supreme originated. However, the decision had been made and the impact more importantly was known. We're talking about a law enforcement agency, the sheriff's department in this small county that was impacted by the Murphy case. And the matter was something that was impending and could impact them at some point. And more importantly, as we go through this, it will factor in to the court's assessment view of the district court's rationale in deciding this case. Well, council, could I just follow up on that? I didn't hear yes or no to Judge Rossman's question. Was it binding or not in 2019? I'm sorry, your honor. No, it was not binding at that time. I'm not sure I understand why the answer would be no. Murphy was handed down in 2017. Judgment was entered. Mandate was stayed. But why wouldn't it nonetheless be a precedent at that circuit? And do you have any authority to suggest otherwise? Because I didn't see any in either brief. Yes, your honor. I think it was. That is the point of my argument, essentially. Although it had been stayed, it was a matter that certainly impacted and was binding on this county. Okay, so now instead of no, we're to yes. So is the answer yes at this point? It was binding? Yes, your honor. I believe because they were fully aware of it and in fact had been proceeding with taking care of the resolution of that which was reversed eventually. And let me joust with you for a minute about that. So you have a case that's basically decided, but the mandate has not issued, right? And I guess I'm having a hard time understanding how any case is binding until such time as mandate is issued. Because up to that time it can be changed. It can be withdrawn. I mean, it wasn't binding even on the parties at that point, was it? Technically, your honor, I think that is a correct statement. I mean, let me see if I can. I think what your position is, is that it was a decision while not binding, maybe put the Oklahoma authorities on notice of the boundaries of this reservation? Yes, your honor. That would be my position. Okay. As the court, as magistrate in this case held the suppression hearing, she found in fact in the testimony of the officer involved, Deputy Youngblood, was that he was familiar vaguely, I believe he used the term repeatedly. It was a part of his training as a cleat officer. He was a fairly new officer and it was a part of his training. And so he was advised that this would be a matter that would have grave impact on the Native American population of which McIntosh County had a significant Native American population. And so it would have an impact. The Murphy decision and this notice that they were on, the court will, combined with the fact that this county had, the sheriff's office had a cross deputization agreement with tribe, the dominant tribe in this county. And the cross deputization agreement was for the most part, wholly ignored by county, sheriff's office and the officers working for them. Nothing essentially done and certainly not with this officer. He had never even seen the cross deputization agreement, let alone gone through any process as required by that cross deputization agreement to acquire authority to act within tribal jurisdiction in this county. Counsel, is it, is my understanding correct that in this case, the cross deputization agreement was not executed as to this particular deputy and the agreement itself applies individual, the commission applies to individual officers, not to police departments, correct? That's correct. He was working under the authority of the McIntosh County Sheriff's office and there was the agreement between that office and the tribal authorities, but the agreement itself required each officer who was going to be cross deputized to go through the process to be approved and cross deputized by action of the tribal authorities. And this officer, as I say, had never even reviewed the cross deputization agreement. I don't believe even seeing a hard copy of it and was obviously never cross deputized nor had any authority or operated under any authority. And these are the factors that really, I think, go to the court's consideration of the found a good faith exception to allow the violation of the fourth amendment of this defendant. And the requirements are that there be objective standards that demonstrate that the officer was acting in good faith. I think that is... Mr. Abel, I'm sorry to interrupt, but time is passing and we need to ask you a few questions. You've raised this issue about whether the officer knew or didn't know that Mr. Patterson was Native American. What indications would a reasonable officer in Deputy Youngblood's position have to know that Mr. Patterson is Native American? Well, first of all, this was not a fast moving investigation. He had the case nine days before he ever attempted to contact Mr. Patterson. He had plenty of time to go through the process of contacting the tribe to determine his status and nothing was done along those lines. His testimony essentially was he was completely unconcerned about whether or not the defendant was a Native American. Well, no, I understand, but my question are what are the looking at on that particular issue? I'm sorry, I'm not sure I understand your question. If you could read it. Well, he checked. Didn't Mr. Patterson check the box that suggested he wasn't Native American? Why isn't that relevant as to the Deputy Youngblood's good faith? I think that Mr. Patterson is a very unsophisticated young man, and if the court were to see him in person, you would recognize him and your first impression would be that he is a black individual, and I think that's how he identified. He has, he does not have the sophistication or I don't think the obligation to identify himself in any particular way to the officer. I understand that, but we're looking at this from the standpoint of a reasonable officer, not Mr. Patterson, but what a reasonable officer would have taken from that. Yes, but I think your question to me was actions of Mr. Patterson indicating that he was black, and in fact, I think it's obvious from a quick review that he is an individual who would appear to be black, but more importantly, the issue for the officer and the officer's been put on notice by his training that the jurisdictional issues change based on tribal affiliation, and that was a simple matter that the officer could this nine day stay when he is not doing anything in regard to this investigation that relates to counsel. I understand your answer. Can I just shift gears for a minute, and I'd like to ask you to focus on the evidence collected in connection with the arrest, and what I'd like you to address is what difference would it make to exclude the evidence collected after the arrest? First of all, I'm not even sure what the evidence is other than it's clothing, and so what does the evidence collected incident to the arrest, does it really have any relevance at this point? I believe it has some relevancy. They also executed a search warrant for DNA. I'm not asking, I don't want to talk about the search warrant yet. I mean, we have the evidence from the search warrant. We have the evidence from the arrest. Now, what was the evidence from the arrest and what excluding it or including it have made any difference in this case? Well, that would be speculation at this point, but it was not highly probative or critical. Was it probative? Was it probative at all? Well, I don't have any way to determine how the court, how the process... Okay, counsel, counsel, what was the evidence? Well, it primarily related to his clothes and items that they took from him personally. And didn't he already, before he was even arrested, corroborate the victim's account before there was any search? Before there was a search, if the court please, he did make a statement according to Officer Youngblood. However, Officer Youngblood also conceded that he denied everything up until the point that the officer deceived him and stated they had evidence that they did not have and persuaded him to make a statement in conformity with what the officer's statement, the victim's statement would be. So it was... Counsel, I'm sorry to interrupt you. To follow on Judge Matheson's question, was there any indication in the district court proceeding that the government was not intending to rely on the evidence collected as part of the arrest? No. My understanding, and the court may be better served by asking Mr. Esley what they intended. I obviously believe they intended to rely on everything they obtained throughout the process, including the evidence that was obtained as a result of his arrest. Counsel, you have 20 seconds to wrap up. Yes. Well, I believe my brief clearly states our position and I would just ask the court to review very closely. I believe there was a deliberate and reckless and grossly negligent approach by this deputy by during his training and the court. Thank you. Thank you, Counsel. Mr. Esley. Thank you, Your Honor. May it please the court. This court should affirm the district court's denial of Mr. Patterson's motion to suppress and it should affirm his sentence. I'll spend my time today as did Mr. Abel on the motion to suppress and there's two grounds, alternative grounds, on which this court can affirm the district court's denial of that motion. First of all, by concluding there was no Fourth Amendment violation and then in the alternative concluding as the district court did that even if there was a Fourth Amendment violation, the good faith exception to the exclusionary rule applies. The analysis is largely the same regardless of the route this court would take. The Fourth Amendment demands only reasonableness. Exclusionary rule does not apply when an officer acts in an objectively reasonable manner. Here, Deputy Youngblood's actions based on a pre-McGirt understanding of the state of the law were entirely reasonable. In many ways, he did everything right. He understood or believed he was an Indian country or excuse me was not an Indian country and thus the Indian status or non-status of Mr. Patterson was completely irrelevant. He determined that he had probable cause to arrest Mr. Patterson. He even called his supervisor to ensure that he did in fact have such probable cause to arrest Patterson without a warrant. Counsel, it seems that what you're arguing right now goes to the officer's culpability, which is directly relevant to the inquiry for good faith. I'm not understanding your argument on how there is no constitutional violation here, particularly in light of our Ross case. Of course, Your Honor, and I'll answer that in two ways and first I'll address Ross and then I'll address your question more broadly. As to Ross, this case is distinguishable from Ross I think in one major way. In Ross, the land in question in Ross was understood at the time of the officer's actions to be Indian country. The land here at the time of Deputy Youngblood's actions was not understood by anybody to be Indian country, although this court had issued its Murphy opinion. As stated earlier, the Murphy opinion had been stayed and Mr. Patterson didn't even think the Murphy opinion was operable at that point. He waited until after McGirt was issued to move to dismiss the pending state proceedings against him. So that's a way to distinguish Ross. It's just the land in question here was not known at that time to be Indian country. Turning to your question more broadly, Judge Rossman, as the Supreme Court said in Hine and DeFillipo, where an officer makes an objectively reasonable mistake, the Fourth Amendment is not violated, and in those cases the officers relied on what was later to be determined an unconstitutional statute or relied on a mistaken understanding of a state law, and the Supreme Court said there was no Fourth Amendment violation there because their mistake was objectively reasonable. And here, as to both the warrantless arrest and to the warranted search of Mr. Patterson, Deputy Youngblood's mistake was objectively reasonable. His own supervisor would have made the same mistake. Counsel, could I just follow up on that? So we have, you're now making the good faith argument as to the reliance on the search warrant, but also an argument based on the arrest. I just want to look at the arrest for now, which is if we disagree with you and we think that Ross applies and you're now looking at making a good faith exception argument, what is your strongest authority that the good faith exception applies to a warrantless arrest that violates the Fourth Amendment? Because in this case, the magistrate judge said you didn't provide any authority. And what is your best authority for a good faith exception in that context, a warrantless arrest? Of course, Your Honor. And I know in response to the magistrate judge's opinion, we have provided additional case law. I think one case that would be of great note to this court would be Ross itself, where this court said there was a warrantless arrest, but then ultimately concluded that the officer was entitled to qualified immunity because he acted in an objectively reasonable manner. Obviously, that's the civil context in the 1983 case, not the criminal context we have here. But the analogy is the same. There's other cases that we've cited throughout our brief that would also support the same conclusion. Hensel from the First Circuit written by Justice, or then Judge Breyer, Engleman from the Eighth Circuit, Passowitz from the Seventh Circuit, Ryan from the First Circuit. Again, several courts who have basically held that when an officer is again in an objectively reasonable manner, even though they may be contravening state law or federal law or the scope of their jurisdiction, as long as that mistake is objectively reasonable, the good faith exception should apply to their conduct such that the exclusionary rule will not apply and that the evidence will not be excluded. Are those all warrantless arrest cases that you're citing? Some are, Your Honor, and some are not. I think the general principle remains the same. Looking at some of my notes here, I believe Passowitz for certain was a warrantless arrest with a federal officer who exceeded his jurisdiction to arrest an individual. Beyond his jurisdiction, Engleman, I also think was a warrantless arrest. That's from the Eighth Circuit. Looking at some of my other notes, Hensel may have been as well, but I can't tell from my notes, Your Honor. Ross obviously was. Thank you. Thank you. I appreciate that. We can check those cases. Just going back to an earlier point, and I'll approach this question this way. You say in your brief the Deputy Youngblood didn't have any idea whatsoever that he was in Indian country or investigating a crime that occurred in Indian country. How can that be so when two years earlier this court held in Murphy that it was Indian country? Your Honor, I think that goes back to the fact that the mandate in this Court's Murphy case had been stayed, and that Deputy Youngblood would have been... Go ahead, Your Honor. I'm not saying whether that point is right or wrong. What I'm having a hard time with is that I just haven't seen you or anyone cite any authority to that effect, that when this Court hands down an opinion and enters a judgment, even though the mandate hasn't issued, why that isn't the law of the circuit at that time? I mean, when this Court issues a mandate, technically what that does is shift jurisdiction back to the District Court, but it doesn't necessarily change the law. So I'm just looking for some help on this, because there's nothing... You cite nothing to say that it isn't binding authority because the mandate hasn't issued. Your Honor, unfortunately, I'm not going to be able to point you to any legal authority. I do rely on his training, relying on the neutral magistrate judge who issued this warrant, relying on his supervisor, relying on the prosecutor who, the day after this warrantless arrest, charged Mr. Patterson with the exact same charge that Deputy Youngblood did. All of those people thought that the state of the law prior to Murphy was still applicable in Oklahoma. And I think... Counsel, can I ask you to clarify what you mean by that? Is it the government's position that at the time of the warrantless arrest, the law as to this jurisdictional question was settled or unsettled? It was unsettled, Your Honor. And in many ways, this question is unsettled still today. Okay, so let me just follow up on that. So if the law was unsettled, what is your best argument that the good faith exception should apply when there's doctrinal uncertainty? When we don't know what the state of the law is, what's your best argument for why the good faith exception should apply? Well, I think it's a mix, Your Honor, of the Supreme Court's holding in Davis, in similar cases where the court has said objectively reasonable reliance on then-binding precedent is appropriate. And as in the Davis case where circuits had either agreed or been applying the pre-Gantt vehicular search test, and officers were relying on that state of the law, and then Gantt happened and changed their understanding of the law and changed the constitutionality of their earlier actions, the Supreme Court in Davis said that those earlier actions, although they may be a Fourth Amendment violation, are not going to result in exclusion because the officers were merely relying on the state of the law as it existed at the time. And the Supreme Court multiple times has said in Pearson v. Ray, in Michigan v. Filippo, that society should not want officers picking and choosing when to follow what they think the law is going to be, or follow pronouncements of the law that are not yet final. Because if they start doing that, what you're going to have are certain officers doing one thing and certain officers doing another thing. And so the whole point of the good faith exception is to allow officers to rely on the existing state of the law until they have a final answer about the issue in front of them, so that society does not bear the cost of exclusion when deterrence is not appreciable. And here, deterrence is simply not appreciable. We have Deputy Youngblood's objectively reasonable reliance on a supervisor, on the state search warrant judge, and on the binding state of the law at the time of his actions. All of those things go to show that he was acting in an objectively reasonable manner. He even testified, and so did the other officer who testified, who at this point was a task force officer for the FBI, but was previously a supervisor at the McIntosh County Sheriff's Office. Both of them testified. If Deputy Youngblood had not done what he did here, he would have been reprimanded, and somebody else or some other agency would have had to step in and done the exact same things he did. That's, to me, a prototypical recipe of when the good exception should be applied. Counsel, could I just shift your focus to the evidence collected incident to the arrest? If we decide that that evidence should have been suppressed, how would that have affected your case? I'm not 100% certain, Your Honor. The evidence collected, to my knowledge, as Mr. Abel stated, were the clothes that Mr. Patterson was wearing at the time of his arrest, and any of the other items he may have had with him at that time. At the time this motion to suppress occurred, I don't believe we met with the victim, and we, for certain, had not acted in a manner to prepare the victim to testify at a trial. And so I'm not certain, as I stand here today, whether we would or would not have relied on that evidence at trial. We simply respond to that... Well, I'm not asking whether you would have relied on it. I said, how would it have affected your case? Well, I guess the answer would be the same. Well, would you have had a case? We would have had a case, Your Honor. I'm not sure if it would have affected it. Well, why haven't you argued harmless error on the search incident to the arrest? Well, on the off chance, Your Honor, that we would need that evidence, we would not want to forfeit the... If this court concluded that it should be suppressed, we would not want to merely say that there was harmless error and that wouldn't have affected Mr. Patterson. And we also just think that harmless error is not appropriate in this case when, as this court said in green, a warranted search, even if it goes beyond the officer's jurisdiction, does not result in a Fourth Amendment violation. And when either way the good faith exception should apply, harmless error really shouldn't be a place this court needs to go. Let me stop you for a minute. So before you arrested him, you had a confession, a written signed confession, and a DNA swab that were arguably voluntarily given to you. After he's arrested, you took his clothes and personal items. In light of that, I mean, you're conceding that there was no harmless error, that the error was not harmless? Is that what you're doing? No, Your Honor. I'm not conceding that. What I'm saying is that harmless error is simply an analytical means that is not necessary here. I mean, it's a common method of analysis to avoid a constitutional question if the error that's being posed is harmless anyway. I mean, it seems like the first thing that we would need to do is analyze whether the error was harmless before we decided to wade into a complicated constitutional analysis. Either whether this court would decide to proceed by way of good faith exception or by way of harmless error, Your Honor, the court can overpass the constitutional question and simply assume that a Fourth Amendment violation occurred. And the government's position here is that the easiest or most formidable path of analytical process here is to, as you said, overlook the constitutional issue, but then proceed to the good faith exception. I understand what both of your honors points about the perhaps lack of probativeness about the clothing that was collected. We simply at that point had not prepared a victim of this sex crime in a way that would have allowed us to decide one way or the other whether that evidence was going to be needed. For all of these reasons, Your Honor. Counsel, you're wrapping up. Go ahead. You're over time. I was just going to say, Your Honor, for all of these reasons, we would ask that the court affirm the district court's motion to suppress. And again, I want to thank the court for allowing us to hear. Counsel, thank you. Thank you for your argument. Thank you. You're over time. I'm going to give Mr. Abel a minute if you want it. Your Honor, I think the issue of harm or error goes directly to the problematic situation that the defendant faced here. There were lots of arguments that could be made. And in light of the posture that we were put in, the avenue that we did, and I would ask the court to review this under all of the facts that were known and recognize that this is not a situation where good faith should exclude or prohibit the application of exclusion of a constitutional violation. Thank you, counsel. Thanks to both of you for your arguments this morning. Zoom approach worked. We could hear you clearly. And we will now consider the case submitted. And both of you are now excused.